1  Justin L. Allamano, State Bar No. 229764
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
2  Rincon Center II
   121 Spear Street, Suite 200
3  San Francisco, California 94105-1582

4  Mitchell P. Brook, State Bar No. 172105
   Jeffrey D. Wexler, State Bar No. 132256
5  Andrea M. Kimball, State Bar No. 196485
   Michael J. Mancuso, State Bar No. 228669
6  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   Del Mar Gateway, 11988 El Camino Real, Suite 200
7  San Diego, California 92130-2594
   Telephone No.: 858.720.6300
8  Fax No.: 858.720.6306
   E-Mail:    jallamano@luce.com
9             mbrook@luce.com
              jwexler@luce.com
10            akimball@luce.com
              mmancuso@luce.com
11
   Attorneys for Instant Media, Inc.
12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| INSTANT MEDIA, INC.,<br><br>　　　Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>　　　Defendant. | Case No. C 07-02639 SBA<br><br>**DECLARATION OF ANDREW LEAK IN SUPPORT OF PLAINTIFF INSTANT MEDIA'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　July 17, 2007<br>Time:　1:00 p.m.<br>Ctrm.:　3<br>The Honorable Saundra Brown Armstrong, District Judge |

1

Case No. C 07-02639 SBA
Declaration of Andrew Leak in Support of
Plaintiff's Motion for Preliminary Injunction

I, Andrew Leak, declare and state as follows:

1. I am the CEO of Instant Media, the plaintiff in the above-referenced matter. Except where noted, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2. Instant Media is a corporation headquartered in Palo Alto, California. In general terms, Instant Media develops software and provides Internet media content delivery to the public and Instant Media's business partners. One of Instant Media's product offerings is software that is presently distributed as the **I'M**® client-side program, downloaded from the Internet and installed on clients' computers to assist with Internet communication and receipt of communication data from remote sources via the Internet. Instant Media promotes the content of others in the field of entertainment to the users of the **I'M**® client-side program.

3. Instant Media's software platform is built on patent-pending caching technology that delivers high-resolution video. Instant Media's product delivers full-screen video in DVD or HD quality – video that is superior to that offered by competitors who utilize lower resolution streaming technologies. Instant Media's software creates an Internet video platform for consumers, advertisers and content providers. (*See* www.im.com.) In conducting this business and marketing its software, Instant Media uses its trademark **I'M**® and the **I'M** family of trademarks.

4. The **I'M**® mark is extremely important to Instant Media because its entire branding is focused around consumers' ability to easily remember that mark and associate it uniquely with Instant Media.

5. Instant Media also operates the website www.im.com. Attached hereto as Exhibit A is a true and correct copy of screen prints from Instant Media's website, taken on April 24, 2007.

6. Instant Media first used the word mark **I'M** in commerce on December 19, 2005. Instant Media applied for a federal trademark registration for the word mark **I'M** on May 10, 2004. On September 26, 2006, Instant Media received a federal trademark registration for the **I'M**

2

Case No. C 07-02639 SBA
Declaration of Andrew Leak in Support of
Plaintiff's Motion for Preliminary Injunction


mark in International Class 35. Attached hereto as Exhibit B is a true and correct copy of Instant Media's registration certificate from the United States Patent & Trademark Office (the "PTO").

7. Instant Media has also applied for federal registration of other marks related to the **I'M**® mark. On July 4, 2006, the PTO allowed Instant Media's application, also filed on May 10, 2004, to register the design mark for **I'M** in a circle in International Class 35. Attached hereto as Exhibit C is a true and correct copy of Instant Media's Notice of Allowance for the design mark for **I'M**.

8. On June 28, 2006, Instant Media filed an application to register a word mark **I'M** for goods in International Class 9. That application was approved by the PTO on May 31, 2007. Attached hereto as Exhibit D is a true and correct copy of this application and the Publication & Issue Review Stylesheet related thereto.

9. Over the past few years, Instant Media has created and promoted a marketing campaign centered around the **I'M** marks. As part of that branding and promotional effort, Instant Media has applied to register three other word marks that include the **I'M** mark: (1) **I'M CACHED**, (2) **I'M INTERESTED**, and (3) **I'M INTERACTIVE**.

10. On May 10, 2004, Instant Media applied to register the mark **I'M CACHED** for International Class 9. The PTO allowed that application on August 2, 2005. Attached hereto as Exhibit E is a true and correct copy of the Notice of Allowance for the mark **I'M CACHED**.

11. On December 13, 2005, Instant Media applied to register the mark **I'M INTERESTED** in International Classes 35 and 38. The PTO published that application for opposition on March 6, 2007. Attached hereto as Exhibit F is a true and correct copy of the Notice of Publication and Notice of Allowance for **I'M INTERESTED**.

12. On May 15, 2006, Instant Media applied to register the mark **I'M INTERACTIVE** in International Class 35. Attached hereto collectively as Exhibit G is a true and correct copy of the application filed with the PTO as well as a true and correct copies of the PTO's confirmation of receipt and the results from the PTO database relating to **I'M INTERACTIVE**. The PTO indicates that the final review prior to publication has been completed and the application will be published for opposition. (*See* Ex. G).

3    Case No. C 07-02639 SBA
Declaration of Andrew Leak in Support of
Plaintiff's Motion for Preliminary Injunction

13. Since 2004, Instant Media has used one or more of the **I'M** trademarks and service marks in connection with its business of providing content delivery via two-way communications over the Internet. Instant Media is currently using all of the marks identified above plus others related to the **I'M** family of marks.

14. Instant Media has created a recognizable branding and media campaign centered around the **I'M** marks featuring **I'M** in conjunction with other words – used both on Instant Media's Internet website and in commercials, marketing materials, and public relations communications. Additional examples of Instant Media's use of **I'M** include, among others, **I'M INSTANT MEDIA, I'M PROUD, I'M CONNECTED, I'M SURFING, I'M THINKING, I'M HD, I'M COOL, I'M UPGRADING**, and **I'M REAL**. Instant Media uses these marks and the associated marketing campaign to build awareness for its software and services, centered on a simple goal to get prospective users to associate our registered mark **I'M** uniquely with our company.

15. To date, consumers have downloaded more than 700,000 copies of Instant Media's software from the Internet.

16. Instant Media has expended considerable resources and time promoting the **I'M** family of trademarks and the advertising campaign centered around the **I'M** marks. In 2006, Instant Media spent more than $1,000,000 to develop television commercials and to buy advertising time for the **I'M** television and Internet advertising campaign. Instant Media has also spent significant resources and effort over the past few years to develop commercials for television and Internet advertising using the **I'M** family of marks and **I'M** plus a modifier. This use of catchy phrases such as "**I'M Cool**" is essentially the same marketing campaign that Microsoft is using when it uses phrases such as "I'm Saving Animals." (*See* http://im.live.com.)

17. An example of one of Instant Media's commercials using the **I'M** marketing effort can be found at http://www.im.com/commercials/index.aspx. Attached hereto as Exhibit H is a true and correct copy of a screen print that shows the web address (the "URL") for the **I'M** commercials. All three of Instant Media's **I'M** commercials can also be viewed at the following YouTube addresses: http://www.youtube.com/watch?v=gcxBOkXE9Rs;

4     Case No. C 07-02639 SBA
Declaration of Andrew Leak in Support of
Plaintiff's Motion for Preliminary Injunction

1  http://www.youtube.com/watch?v=hbMcNav5l3s; and

2  http://www.youtube.com/watch?v=gUeevEQ-EcI.

3      18.    Recently, Instant Media became aware that Microsoft was using the **I'M** trademarks in conjunction with consumer Internet services.  Instant Media then contacted Microsoft to seek its voluntary agreement to discontinue infringement or otherwise resolve the matter.  Microsoft declined to stop its infringement, and Instant Media served its Complaint and prepared its motion for preliminary injunction.

    19.    Microsoft has a messaging system called Windows Live Messenger.  I am advised that in promoting its Windows Live Messenger software, Microsoft began a branding and promotional campaign under the designation "**i'm.**"  Microsoft's Windows Live Messenger/**i'm** software can be downloaded free of charge from the Internet and installed on consumers' computers to assist with Internet communications and receipt of content data from remote providers.  Microsoft's use of the **I'M** mark in conjunction with another modifier can be viewed at http://im.live.com/messenger/im/home/?source=MSNTDLINK.

    20.    Microsoft is also using Instant Media's **I'M** marks to distinguish its Internet address, im.live.com.  Microsoft's current use of the **I'M** marks can be viewed at the above URL.  A true and correct copy of a printout of pages from Microsoft's website, taken as of April 24, 2007, is attached hereto as Exhibit I.

    21.    In addition to the use of i'm on Microsoft's website, I have personally observed that people who sign up for Microsoft's "**i'm**" through Window's Live Messenger can select to become "**i'm** [name]."  For example, I could be "**i'm** Andy."  Attached hereto as Exhibit J is a true and correct copy of a printout I generated using  MSN Messenger, dated May 4, 2007.  This document shows that I was conversing in the United States with a gentleman from China.  I started dialog with this person in the context of exploring a potential business relationship and was shocked to find our registered mark used in MSN Messenger.  I would anticipate that millions of users will be exposed to Microsoft's use of the **i'm** mark through Microsoft's **i'm** campaign.

    22.    Both Instant Media and Microsoft market the **I'M** mark to consumers and the general public.

5
Case No. C 07-02639 SBA
Declaration of Andrew Leak in Support of
Plaintiff's Motion for Preliminary Injunction

23. Both companies offer free downloadable software on their websites so that Internet consumers may use their respective products. Both companies actively reach out to the same target consumers – Internet users.

24. Instant Media and Microsoft market their goods and services under the **I'M** mark to consumers through the same channel – over the Internet.

25. Microsoft's business also seems to involve third-party advertisers who place ads on Microsoft's products. Long before filing this lawsuit, Instant Media's long-range plans have included placement of third-party advertisements on its products. To further such efforts, Instant Media has been cultivating relationships with advertising agencies.

26. Both Instant Media and Microsoft seek publicity and positive product reviews in the same trade journals, and, indeed, talk to the same journalists. For instance, Instant Media has expended significant resources to seek publicity and media coverage in magazines such as *Consumer Electronics*, *PC World*, many influential technology blogs, and others. Microsoft also appears in these industry publications. Instant Media has engaged in a massive public relations campaign with journalists to reinforce the term "**I'M**" as being associated with only our company. For example, in the summer of 2006, Instant Media sent custom-made t-shirts to dozens of bloggers and industry analysts using the them "I'M [journalist's name]. In the past, journalists and bloggers have been responsive and have further promoted our brand by, for example, entitling their articles "I'M Ready for TV" or "I'M – Instant Media." For examples of Instant Media's publicity in trade journals see http://www.im.com/newsite/news/index.aspx.

27. Both Instant Media and Microsoft also compete for placement on the list of search result standings for the search term **I'M**. To that end, both companies market the same way by using both paid search marketing and free search marketing on Internet search engines such as Google, MSN, and Yahoo.

28. Instant Media generates business through Internet consumers using Internet search engines like Google, MSN, or Yahoo. I have observed a change in the search term result placements on the Internet as a result of Microsoft using the **I'M** mark. For example, prior to March 2007, whenever I typed the search term "**I'M**" into Google or MSN, Instant Media

6     Case No. C 07-02639 SBA
Declaration of Andrew Leak in Support of
Plaintiff's Motion for Preliminary Injunction

appeared first or second on the list of search results. After Microsoft launched its "**i'm**" campaign, Instant Media has dropped significantly in the list of search results on MSN and Google – always appearing after Microsoft. And, even since the filing of the lawsuit on May 17, 2007, Instant Media's search result position has dropped dramatically on www.msn.com.

29. I periodically conduct searches using the term "**I'M**" on Microsoft's search engine, www.msn.com. On May 15, 2007, I conducted a search, and Instant Media posted as entry number five. Microsoft's entry appeared first. Attached hereto as Exhibit K is a true and correct copy of the screen print from that May 15, 2007 search. As of May 15, 2007, Instant Media's **I'M** still appeared on the first page.

30. I personally continue to monitor Instant Media's presence on MSN. Attached hereto as Exhibit L is a true and correct copy of a search result performed on msn.com on June 4, 2007. This June 4, 2006 search reveals that an MSN search no longer lists Instant Media's **I'M** as a top search result for the search term "**I'M**." On this date, Instant Media appeared as the 22nd search result, on the third page of results. (*See* Ex. M at 9.) Microsoft's two results appear as the first and second entries on page one. (*See id.* at 5-6.) In my prior searches (late May and early June of 2007), I have noticed Instant Media even further down the list of "hits" on MSN.com.

31. I also monitor search results related to **I'M** using the Google search engine. Attached hereto as Exhibit M is a true and correct copy of search results on Google, performed by me on May 15, 2007. This screen print shows that Instant Media is the fourth entry on the list. This screen print also does not include any Microsoft sponsored links (paid advertising).

32. I conducted another Google search on May 30, 2007, after Instant Media filed this lawsuit. Attached hereto as Exhibit N is a true and correct copy of search results from my May 30, 2007 Google search. This screen print shows that: (1) Instant Media's **I'M** appears as the fourth entry on the list, and (2) Microsoft posted a "Windows Live Messenger" link under Google's "Sponsored Links." (*Id.*)

Case 4:07-cv-02639-SBA   Document 9   Filed 06/12/2007   Page 7 of 8

7

Case No. C 07-02639 SBA
Declaration of Andrew Leak in Support of
Plaintiff's Motion for Preliminary Injunction

1　　　33.　Since Microsoft launched its campaign using the **I'M** mark, Instant Media has received a number of phone calls and website inquiries from a number of consumers with questions concerning instant messaging.

　　　I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of June, 2007 at Palo Alto, California.

By: _____*Andrew Leak*_____
　　　　Andrew Leak

201001138.1

8　　　　　　　　　　Case No. C 07-02639 SBA
Declaration of Andrew Leak in Support of
Plaintiff's Motion for Preliminary Injunction