Michael A. Piazza (SBN 235881)
DORSEY & WHITNEY LLP
38 Technology Drive
Irvine, CA 92618-5310
Telephone: (949) 932-3600
Facsimile: (949) 932-3601
piazza.mike@dorsey.com

Attorneys for Plaintiff INSTANT MEDIA, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| INSTANT MEDIA, INC.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>　　　　　　Defendant. | NO.: C 07-02639 SBA<br><br>**PLAINTIFF INSTANT MEDIA, INC.'S NOTICE OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; MOTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>[DECLARATION OF MICHAEL A. PIAZZA IN SUPPORT OF MOTION TO AMEND COMPLAINT (FILED CONCURRENTLY)]<br><br>**HEARING:**<br>Date: February 5, 2008<br>Time: 1:00 p.m.<br>Crtrm: 3 |

///

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, on Tuesday, February 5, 2008, at 1:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Saundra Brown Armstrong in Courtroom 3 of the United States District Court for the Northern District of California, Oakland Division, located at 1031 Clay Street, Third Floor, Oakland, California 94612, Plaintiff INSTANT MEDIA, INC. ("Instant Media") will, and hereby does, move the Court for an order granting leave to file an amended complaint against Defendant Microsoft Corporation ("Microsoft") that includes a claim for violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C.A., § 1125(d).  A copy of Instant Media's proposed First Amended Complaint is attached as Exhibit "A" to this motion.

This motion is made, pursuant to Rule 15 of the Federal Rules of Civil Procedure, on the following grounds:  (1) Instant Media has learned of facts that justify amendment of the complaint to add an additional theory of relief; (2) this is Instant Media's first request to the Court seeking leave to amend its complaint; (3) the ACPA cause of action is similar to the legal theories already asserted against Microsoft, and thus the discovery completed by both parties is relevant and applicable such that Microsoft will not be prejudiced, and the trial of this action need not be postponed beyond its currently scheduled date; (4) this motion and the proposed First Amended Complaint are being filed by the stipulated deadline of December 11, 2007; and (5) justice would be served by the granting of leave to amend in that the ACPA claim asserted in the proposed First Amended Complaint arises out of the same facts and circumstances, and the same transactions, as already alleged in the Complaint.

This motion is based upon this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Michael A. Piazza in Support of Motion to Amend Complaint ("Piazza Decl."), the proposed First Amended Complaint attached as Exhibit "A" to the Piazza Decl., and all other pleadings and papers on file in this action, together with such other evidence and oral argument as may be presented at the hearing of this motion.

**MOTION FOR LEAVE TO AMEND AND**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

## I. INTRODUCTION

Plaintiff Instant Media, Inc. ("Instant Media") filed a six-count complaint against Microsoft in this Court on May 17, 2007. The very next day, Microsoft announced its intent to acquire aQuantive—a fact that Instant Media now believes strongly supports an additional claim in this action under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C.A., § 1125(d). In its original complaint, Instant Media sought redress for Microsoft's infringement of its **I'M** mark. Instant Media now seeks to file an amended complaint additionally alleging that Microsoft is in violation of the ACPA. Instant Media's motion to amend should be granted because it is timely filed and there is no undue delay by Instant Media in filing its proposed amended complaint nor will it substantially prejudice Microsoft.

## II. STATEMENT OF FACTS

### A.    Instant Media's I'M Marks

Instant Media has spent years developing and patenting software while simultaneously negotiating numerous related business agreements with partners, for the products and services it offers under it's **I'M** family of marks. Instant Media's main product is software that is downloaded from the Internet and installed on clients' computers to assist with Internet communication and reception of high-definition video and other data from remote Internet sources. This product, among Instant Media's others, has been offered through its website at www.im.com. This innovative, patent-pending software delivers full-screen video in DVD or HD quality, so it is superior to competitors' streaming technologies. (See, Declaration of Andrew Leak ("Leak Decl."), on file herein, ¶¶ 2, and 3.)

Since December 19, 2005, Instant Media has used its **I'M** family of trademarks in marketing its products and services.[1] These marks are extremely important to Instant Media because its entire branding is focused around consumers' ability to easily remember that mark and to associate it uniquely with Instant Media and its website, www.im.com. (Id., ¶¶ 4 and 5.)

---

[1] These trademarks are listed in detail in Instant Media's Complaint, on file herein.

2

Instant Media has used the **I'M** trademarks since at least as early as 2004. In order to protect the **I'M** mark, Instant Media applied to register it as a federal trademark on May 10, 2004, and the registration was issued on September 26, 2006. (Id., ¶ 6.) That registration, in International Class 35, is for: "electronic retailing services via the Internet and other electronic communications networks, featuring general consumer merchandise, music, movies and related merchandise; developing on-line promotional campaigns for others in the field of entertainment." (Id.) Instant Media went on to develop a whole family of **I'M** trademarks and consistently used this family of marks in connection with its branding and promotional efforts for its business of providing Internet content delivery. (Id., ¶ 15.)

Over the past few years, Instant Media has created and promoted a marketing campaign centered around the **I'M** family of marks. (Id., ¶ 9.) The result is that it has created a recognizable and <u>distinctive</u> branding and media campaign, featuring **I'M** alone and in conjunction with other words used both on Instant Media's Internet website and in commercials, marketing materials, and public relations.[2] (Id., ¶¶ 14, 26.) In fact, the marks are crucial to Instant Media's efforts to build awareness of its software and services, and to get prospective customers to associate **I'M** uniquely with Instant Media. (Id., ¶ 14.)

### B. Microsoft's Infringement of Instant Media's I'M Mark

On February 27, 2007, without the knowledge or consent of Instant Media, Microsoft filed three U.S. federal applications to register the trademark "**i'm**." Two days after filing these applications, Microsoft launched its **i'm** campaign to promote its Windows Live Messenger Software. Since then, "thousands of Windows Live Messengers have joined." (See, Piazza Decl., Exhibit "B" [press release on MSN Website regarding Windows Live Messenger].) Microsoft promotes Windows Live Messenger as the "next generation" in Internet communication and reception of data, such as voice and video. (See, Exhibit "C" to Piazza Decl. [Microsoft web pages describing Windows Live Messenger].)

---

[2] For instance: **I'M INSTANT MEDIA, I'M PROUD, I'M CONNECTED, I'M SURFING, I'M THINKING, I'M HD, I'M COOL, I'M UPGRADING,** and **I'M REAL.** (Id., ¶ 14.)

3

Customers who sign on to Microsoft's website for Windows Instant Messenger (www.im.live.com), see repeated uses of "**i'm,**" such as: "**i'm saving animals."**  Not only is Microsoft using **I'M** as part of its Internet address, it is also using the mark in slogans—just like Instant Media uses the mark.  Microsoft even offers consumers who sign up on the www.im.live.com website to be designated as "**i'm <name>**"; similar to Instant Media promotional t-shirts.

Of course, consumers don't have to go directly to Microsoft's websites to find its **i'm** web pages.  Entering **I'M** on Google, Yahoo, and other search engines produces links to Microsoft's **i'm** websites.  It is the very first link that comes up on both the Google and Yahoo search lists for both "I'M" and "i'm." (See, Piazza Decl., Exhibit "D" [copies of the first page of the current Google and Yahoo result lists.)  And after Instant Media asked Microsoft to cease and desist from using the **I'M** mark, Microsoft purchased the keyword "I'M" from Google to generate hits for the Windows Live Messenger website under Google's "sponsored links."  (Leak Decl., ¶¶ 31-32.)  With full knowledge and in bad faith, Microsoft has and continues to simply ignore Instant Media's request that it cease use of the **I'M** designation. (Id., ¶ 18.)

Before March 2007, a search for "I'M" on Google or MSN yielded Instant Media's website as the first or second result on the list.  (Id., ¶ 28.)  But since then, Microsoft's **i'm** websites have appeared at the top of the list—always well above Instant Media's website.  (Id., ¶¶ 28-30.)

**C.  The Instant Lawsuit Arises from Microsoft's Infringement of Instant Media's Marks.**

Instant Media has filed the instant Complaint alleging six causes of action arising out of Microsoft's infringement of the Instant Media **I'M** marks.  A request for injunctive relief was the initial main focus of the action.  (See, Instant Media's Motion for Preliminary Injunction, filed herein on June 12, 2007.)  After the motion for preliminary injunction was denied on August 13, 2007, Instant Media began to focus on its further investigation of the underlying

facts supporting its claims, especially with regard to Microsoft's misuse and misappropriation of the **I'M** marks and future plans for expansion of same.

### D. New Facts

Instant Media's fears regarding Microsoft's expansion of its misuse and misappropriation of the **I'M** trademark have been confirmed. Instant Media learned that Microsoft acquired aQuantive, Inc. ("aQuantive"), to provide an established platform to offer, among many other things, video-on-demand and IPTV—products similar if not identical to Instant Media's. (See, Piazza Decl., Exhibit "E" [press release announcing Microsoft's plan to acquire aQuantive].) Significantly, a May 18, 2007 press release from Microsoft announced its $6 billion cash purchase of aQuantive, Inc.—"the parent company of one of the industry's most successful families of digital marketing service and technology companies." (Id.) Microsoft completed its acquisition on August 13, 2007. (See, Piazza Decl., Exhibit "F" [aQuantive press release].) The acquisition immediately created a major platform for Microsoft to provide, among many other things, video-on-demand and IPTV. (Piazza Decl., Exhibits. E & F.)

Consumers looking for Instant Media's website (www.im.com) can be easily misdirected to the confusingly similar **i'm** web site (www.im.live.com ) through Microsoft's use of the **I'M** mark in its domain name and keywords. They can then quickly link to, and browse, the other Microsoft websites including those that offer video-on-demand and IPTV—products that are similar if not identical to those offered by Instant Media. As discussed *infra*, these new facts support the ACPA cause of action, because they underscore Microsoft's "bad faith intent to profit" from use of the **I'M** mark in its domain name.

///

5

## III. ARGUMENT

### A. The Proposed Amendment for the ACPA Cause of Action is Supported by the New Facts.

Instant Media seeks to amend its Complaint to add a cause of action for Microsoft's violation of the ACPA. Under the ACPA, a trademark owner is entitled to relief, including an order requiring transfer, forfeiture, or cancellation of the domain names and/or recovery of up to $100,000 for each domain name, if the trademark owner shows: (1) it owns a distinctive or famous mark; (2) the defendant registers, uses, or traffics in a domain name that is identical to, or confusingly similar to, the mark; and, (3) the defendant had a "bad faith intent to profit" from the mark. ACPA, 15 U.S.C.A., § 1125(d)(1).

Here, Instant Media's **I'M** mark is adequately distinctive for trademark purposes. Further, Instant Media has created a recognizable and <u>distinctive</u> branding and media campaign, featuring **I'M** alone and in conjunction with other words used both on Instant Media's Internet website and in commercials, marketing materials, and public relations. Thus, if not famous, the mark is at least "distinctive," and satisfies the first element of the ACPA.

Microsoft's domain name, www.im.live.com, incorporates the **I'M** mark. In fact, it is merely Instant Media's domain name, www.im.com, except with the word "live" added. Microsoft's use of the **I'M** mark in its domain name, sponsorship of the letter string for keyword searches, and the mere statistical impact on search results of using "**i'm**" in a Microsoft domain name, all result in the misdirection of consumers to a Microsoft website resulting in "initial interest confusion."[3] Thus, the second ACPA element is satisfied because Microsoft's domain name is "confusingly similar" to Instant Media's.

---

[3] See, e.g., Playboy Enters. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1024-25 (9th Cir. 2004); Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 259 (2d Cir. 1987); Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 294 (3d Cir. 2001); Sara Lee Corp. v. Kayser-Roth Corp., No. 6:92CV00460, 1992 WL 436279, at *24 (M.D.N.C. Dec. 1, 1992) (applying initial interest confusion in 4th Circuit); Elvis Presley Enters. v. Capece, 141 F.3d 188, 204 (5th Cir. 1998); PACCAR Inc. v. TeleScan Techs., L.L.C., 319 F.3d 243, 253 (6th Cir. 2003); and, Forum Corp. of N. Am. v. Forum Ltd., 903 F.2d 434, 442 n.2 (7th Cir. 1990).

1  This Court recognized, in its Order of August 13, 2007 (on file herein), that Microsoft undoubtedly had plans to expand its use of the subject mark:

> "Undoubtedly, the true intent behind the **i'm** initiative is to saturate the market with the '**i'm**' mark and thereby cultivate the association of the mark with [Windows Live Messenger] in consumers' minds, as demonstrated by the manifest illogic of spending '[multiple] millions of dollars' to advertise and develop a 'philanthropic campaign' whereby Microsoft has pledged to contribute $1 million to charities and to date has contributed less than $40,000, and presumably with an eye to eventually appropriating some form of the 'IM' abbreviation for instant messaging as a trademark."
> (Id., p. 15.)

Instant Media contends that these suspicions now are confirmed, given Microsoft's acquisition of aQuantive. Through this transaction, Microsoft has an established platform to provide, among many other things, video-on-demand and IPTV—products similar if not identical to Instant Media's. And these products are only a click or two away for consumers to explore through links on Microsoft's www.im.live.com website. These new facts strongly support the third element of Instant Media's ACPA claim—that Microsoft has a "bad faith intent to profit" from its incorporation of the **I'M** mark.

**B.    Under Rule 15, the Standard for Amending Pleadings Is Very Liberal.**

Once a responsive pleading has already been served, a party may amend its pleading by leave of the court. Fed. R. Civ. Proc. 15(a). And Rule 15(a) provides a liberal standard for the amendment of pleadings, stating that "leave to amend shall be freely given when justice so requires." Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962); Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) (citations omitted).

The United States Supreme Court has emphasized that Rule 15(a) requires courts to look favorably on motions to amend the pleadings. See Foman, 371 U.S. at 182. Within the Ninth Circuit, this policy should be applied with "extraordinary liberality." See Morongo Band of Mission Indians v. Rose, 893 F.3d 1074, 1079 (9th Cir. 1990) (quoting DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987)).

7

The Ninth Circuit has identified four factors that are to be taken into consideration in determining whether a motion for leave to amend should be granted: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party.  See Royal Ins. Co. of Am. v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999) (citing Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994)); Lockheed, 194 F.3d at 986 (citing Griggs v. Pack Am. Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999)); Hurn v. Retirement Fund Trust, 648 F.2d 1252, 1254 (9th Cir. 1981) (citing Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973)).

### C. The Court Should Grant the Instant Motion Because there is No Undue Delay, Bad Faith, or Prejudice, and the Anticybersquatting Cause of Action is Well-Founded.

The Ninth Circuit has held that delay by itself is not a sufficient ground for denying a Rule 15(a) motion to amend.  See Morongo, 893 F.2d at 1079 (stating that delay of two years is not enough by itself to support denial); Hurn, 648 F.2d at 1254 (permitting amendment after two year delay); Howey, 481 F.2d at 1190-91 (holding that a five year delay alone was not sufficient grounds to deny a motion for leave to amend).  In fact, waiting until there is sufficient evidence of conduct upon which claims of wrongful conduct are based is a satisfactory explanation for delay.  See Compression Labs, Inc. v. Oklahoma State Univ. Educ. and Research Found., Inc., CIV. 93-20622 RPA, 1995 WL 241438, at *2 (N.D. Cal. Apr. 9, 1995) (citing DCD, 833 F.2d at 187).  And if there is a lack of prejudice and the amended complaint is obviously not frivolous or made in bad faith, then it is an abuse of discretion to deny the motion.  See Howey, at 1190-91.

In this case, Instant Media did not discover that Microsoft had acquired aQuantive until after it filed its Complaint in this action.  Specifically, the acquisition was announced on May 18, 2007—the day after the Complaint was filed—and was not completed until August 13, 2007.  (See, Piazza Decl., Exhibits "E" and "F.")  As discussed, *supra*, Instant Media contends that these new facts strongly support its ACPA claim, and Instant Media could not have known of these facts prior to filing its complaint as the announcement was not made until the day after

8

the Complaint was filed.  Moreover, the instant motion and proposed First Amended Complaint are being filed by the deadline for amending pleadings that the Court set in this case.  Thus,  Instant Media did not unduly delay in seeking to file the amended complaint.

Further, there is no prejudice to Microsoft because the new ACPA claim arises out of the same core facts as do the other claims—i.e., Microsoft's infringement of the **I'M** marks.  In the absence of prejudice to the opposing party, leave to amend should be freely given. See Compression Labs, 1995 WL 241438, at *2 (citing Keniston v. Roberts, 717 P.2d 1295, 1300 (9th Cir. 1983)).  And to justify denial of leave to amend, the prejudice must be *substantial*. See Circuit Breaker, 175 F.R.D. at 551 (citing Morongo, 893 F.2d at 1079).  In this case, there is no substantial prejudice to Microsoft because the amended complaint will not greatly alter the nature of the litigation, nor cause Microsoft to take on a new line of defense.  Microsoft is fully prepared to litigate the substantive issues raised by the amended complaint because the new cause of action arises out of the same core issues and is clearly related to the original claims.  In short, no prejudice to Microsoft will occur as the amendment will not radically change the action, the instant motion is filed within the Court-set deadline, and no change of the trial date or pre-trial deadlines will be necessitated.

Finally, the amendment to Instant Media's complaint is not futile because it states sufficient facts to support an ACPA claim.  A proposed amendment is deemed futile only if the plaintiff would be unable to prove facts under the amended complaint that would entitle the plaintiff to relief.  See Jones v. State, No. C 94-20901 JW, 1996 WL 37792, at *2 (N.D. Cal. Jan. 19, 1996) (citing Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)).   Also, courts do not consider the validity of a proposed amended pleading in deciding whether to grant leave to amend; rather, challenges to the pleadings are deferred until after leave to amend is granted and the amended pleading is filed.  See Qualcomm, Inc. v. Motorola, Inc., 989 F. Supp. 1048. 1051 (S.D. Cal. 1997).  Instant Media's motion should be granted because the proposed amended complaint states sufficient facts, if proven, that would allow recovery.  (See detailed discussion, *supra*, at § III(A); and, [Proposed] First Amended Complaint].)

9

In considering all of the above factors, the amendment to add the Anticybersquatting claim to Instant Media's complaint will not result in any undue delay or substantial prejudice to Microsoft, the new claims state meritorious claims for relief, there is no bad faith on Instant Media's part, and this is Instant Media's first request seeking leave to amend. Accordingly, under the liberal policies governing amendments of pleadings, the court should grant Instant Media leave to amend its complaint.

### IV.  CONCLUSION

For the above reasons, Instant Media respectfully requests that this Court grant the instant motion to amend the Complaint to add a cause of action against Microsoft for violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C.A., § 1125(d).

DORSEY & WHITNEY LLP

DATED:  December 11, 2007

By:  /s/ Michael A. Piazza
_____
MICHAEL A. PIAZZA
Attorneys for Plaintiff INSTANT MEDIA, INC.